# IN THE MATTER OF:
# B.W.S.,
# A Youth in Need of Care.

No. DA 13-0792.
Submitted on Briefs July 2, 2014.
Decided July 29, 2014.
2014 MT 198.
376 Mont. 43.
330 P.3d 467.

For Appellant: **Kathryn McEnery**; McEnery Law Office, PLLC; Kalispell.

For Appellee: **Timothy C. Fox**, Montana Attorney General; **Tammy K Plubell**, Assistant Attorney General; Helena; **Carolyn Berkram**, Glacier County Attorney; Cut Bank.

JUSTICE BAKER delivered the Opinion of the Court.

¶1 T.L.S. (Mother) appeals an order of the Ninth Judicial District Court terminating her parental rights to her minor child, B.W.S. We

address the following issues on appeal:

¶2 1. *Whether the District Court lacked subject matter jurisdiction because several statutory deadlines had passed.*

¶3 2. *Whether Judge Olson was required to disqualify himself as a matter of law.*

¶4 We affirm in part and reverse in part.

## PROCEDURAL AND FACTUAL BACKGROUND

¶5 In February 2012, the State filed a Petition for Emergency Protective Services and Temporary Investigative Authority. The State, on behalf of the Department of Public Health and Human Services (DPHHS), alleged abuse and neglect of the infant B.W.S. by her mother. Presiding District Judge Laurie McKinnon immediately ordered appointment of a Court-Appointed Special Advocate and Guardian ad Litem (CASA/GAL) for B.W.S. and appointed counsel to represent the CASA/GAL, B.W.S., and Mother. On February 6, 2012, attorney Robert G. Olson was assigned as counsel for the CASA/GAL. After a show cause hearing held on February 8, 2012, Judge McKinnon issued an order on March 20, 2012, that granted temporary investigative authority to DPHHS until May 8, 2012.

¶6 Venue issues caused delays as the case moved forward. On March 21, 2012, the State moved the court to transfer venue to Cascade County because Mother had moved to Great Falls. The court granted the petition, but reassumed jurisdiction of the case on May 21, 2012, after Mother left Montana.

¶7 The State petitioned for adjudication of B.W.S. as a Youth in Need of Care and for temporary legal custody. An adjudicatory hearing was held on June 20, 2012. Olson appeared at the hearing on behalf of the CASA/GAL. The Court held that B.W.S. was a youth in need of care and allowed DPHHS to place B.W.S. in foster care. The court held a dispositional hearing on September 6, 2012. Judge McKinnon acknowledged that she did not hold the dispositional hearing within twenty days of the adjudication as required by law. Following the dispositional hearing, the court adopted and ordered a treatment plan for Mother and extended temporary legal custody of B.W.S. to DPHHS for six months.

¶8 Olson was granted leave to withdraw as counsel for the CASA/GAL on December 6, 2012, following his election to replace Judge McKinnon as the new District Court Judge for the Ninth

Judicial District.[1] Judge Olson presided over a status hearing in this case on February 13, 2013.

¶9 On March 5, 2013, the State petitioned for permanent legal custody and the termination of Mother's parental rights on the basis that Mother failed to complete the court-ordered treatment plan. Judge Olson presided over a permanency plan hearing on May 22, 2013, and held a termination hearing on September 25, 2013. He entered an order on November 8, 2013, terminating Mother's parental rights and granting DPHHS permanent legal custody with the right to consent to adoption. Mother appeals the order terminating her parental rights.

## STANDARD OF REVIEW

¶10 Whether a court possesses subject matter jurisdiction is a question of law. *Watson v. West*, 2011 MT 57, ¶ 15, 360 Mont. 9, 250 P.3d 845. Whether a district court violated a parent's constitutional right to fundamentally fair proceedings is a question of constitutional law for which this Court's review is plenary. *In re J.W.*, 2013 MT 201, ¶ 25, 371 Mont 98, 307 P.3d 274.

## DISCUSSION

¶11 *1. Whether the District Court lacked subject matter jurisdiction because several statutory deadlines had passed.*

¶12 Mother argues that the District Court was divested of subject matter jurisdiction to terminate her parental rights because the court missed several statutory deadlines early in the proceedings. An order granting temporary investigative authority expires after 90 days. Section 41-3-433, MCA. An adjudication hearing must be held within 90 days of a show cause hearing. Section 41-3-437(1), MCA. The District Court held a show cause hearing on Feb. 8, 2012, and granted temporary investigative authority to DPHHS. The adjudicatory hearing was held June 20, 2012, at which time the court adjudicated B.W.S. a youth in need of care and granted the State's petition for temporary legal custody. More than 90 days passed between these events, violating the deadlines in both § 41-3-433 and § 41-3-437(1), MCA. Finally, under § 41-3-438(1), MCA, a dispositional hearing must be held on a petition within 20 days after an adjudicatory order has been entered. Adjudication occurred on June 20, 2012, but the dispositional hearing was held on July 25, 2012, after more than 20

---

[1] Judge McKinnon was elected to the Montana Supreme Court in November 2012. She recused herself from participation in this case on appeal.

46

days had passed.

¶13 The Montana Constitution establishes the subject matter jurisdiction of the district courts. Mont. Const. art. VII, § 4. Subject matter jurisdiction is the court's fundamental authority to hear and adjudicate a particular class of case or proceeding. *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶¶ 56-57, 345 Mont. 12, 192 P.3d 186. The District Court's constitutional authority to hear this type of case is not affected by its failure to follow statutorily-prescribed procedural deadlines. *In re A.D.B.*, 2013 MT 167, ¶ 54, 370 Mont. 422, 305 P.3d 739 (citing *BNSF Ry. Co. v. Cringle*, 2010 MT 290, ¶ 13, 359 Mont. 20, 247 P.3d 706).

¶14 ▉ Mother challenges only the court's subject matter jurisdiction; she does not claim that she was prejudiced by the slight delays or dispute the fundamental fairness of the proceedings. We have observed that it is important for the District Court to meet deadlines and handle custody cases expeditiously. *In re A.J.S.*, 193 Mont. 79, 86, 630 P.2d 217, 222 (1981). In matters involving abused and neglected children, however, "we have consistently held that a district court may protect the children's best interest despite procedural errors." *In re F.H.*, 266 Mont. 36, 39, 878 P.2d 890, 892 (1994). We hold that the District Court's failure to meet certain procedural deadlines did not affect its subject matter jurisdiction over this case.

¶15 *2. Whether Judge Olson was required to disqualify himself as a matter of law.*

¶16 Recusal of judges in Montana is governed by § 3-1-803, MCA, and Supreme Court Rule 2.12 of the Code of Judicial Conduct. *Reichert v. State*, 2012 MT 111, ¶¶ 41-42, 365 Mont. 92, 278 P.3d 455. The statute provides that "[a]ny ... judge ... must not sit or act in any action or proceeding ... [w]hen he has been attorney or counsel in the action or proceeding for any party ... ." Section 3-1-803(3), MCA. The Code of Judicial Conduct additionally states that a judge should disqualify himself when he "served as a lawyer in the matter in controversy." Rule 2.12(A)(5)(a), Code of Judicial Conduct; *Bullman v. State*, 2014 MT 78, ¶ 14, 374 Mont 323, 321 P.3d 121.

¶17 ▉ The State concedes that Judge Olson should have recused himself from the case. Judge Olson presided over the permanency plan and termination hearings after having actively represented the CASA/GAL in several hearings as counsel in the same case. A natural parent has a fundamental liberty interest in the care and custody of a child, which must be protected by fundamentally fair procedures at all stages of the proceedings for the termination of parental rights. *In re*

*B.N.Y.*, 2003 MT 241, ¶ 21, 317 Mont. 291, 77 P.3d 189. Judge Olson served as counsel in the case and was required to disqualify himself as a matter of law.

¶18 Mother also argues that the District Court abused its discretion in terminating her parental rights to B.W.S. without first appointing her a guardian ad litem. Mother was never adjudicated incompetent, however, and no guardian ad litem was requested for her by counsel. Because we are ordering a new hearing on the termination petition, we decline to consider this issue further. Finally, for the same reason, there is no need to address Mother's claim of ineffective assistance of counsel.

## CONCLUSION

¶19 The District Court retained jurisdiction over the case despite procedural irregularities early in the proceeding. We reverse the termination order and remand for a new hearing before a different judge on the petition to terminate parental rights.

CHIEF JUSTICE McGRATH, JUSTICES COTTER, WHEAT and RICE concur.